IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONZO EXUM, : | |
|     Plaintiff, : | |
| : | |
|     v. : | Case No. 2:23-cv-03891-JDW |
| : | |
| GEORGE LITTLE, et al., : | |
|     Defendants. : | |

## **MEMORANDUM**

Inmates who want to challenge the conditions of their confinement must do far more than assert conclusory allegations in a Complaint. To survive summary judgment, they must offer evidence to support those allegations. In this case, state prisoner Alfonzo Exum asserts that Pennsylvania prison officials violated his First, Eighth, and Fourteenth Amendment rights by placing him in administrative custody for over four years following a violent assault on a correctional officer. But Mr. Exum's claims cannot survive summary judgment because he has not come forward with evidence to prove his claims.

**I.     BACKGROUND**

    **A.     Confinement**

Mr. Exum has been in the Pennsylvania Department of Corrections's custody since at least June 2, 2009. Between that time and February 10, 2020, Mr. Exum engaged in fourteen founded acts of misconduct, some of which were violent assaults against prison staff members and other inmates. On February 10, 2020, while he was housed at SCI-Smithfield, Mr. Exum struck a correctional officer several times in the head and face, using

a closed fist and a lock in a sock. The officer hit his head on the wall and floor and was hospitalized. Prison officials held a hearing for that misconduct and determined that Mr. Exum was guilty.

The prison officials placed Mr. Exum in Administrative Custody and put him on the Restricted Release List ("RRL"). Administrative Custody is a status of confinement that provides closer supervision, control, and protection than in general population, and the RRL is a list of inmates who may only be placed and released from Administrative Custody status upon prior approval of the Executive Deputy Secretary for Institutional Operations. Inmates can be placed on the RRL for a variety of reasons, including: (a) a history of assaults against staff; (b) a history of assaults against inmates; (c) perpetuated sexual abuse history; (d) escape history, or serious escape attempt; and/or (e) threat to the orderly operation of a facility. For the first thirty days of Administrative Custody, an inmate is permitted one hour per day, five days per week, of exercise, increasing to three hours per day, seven days per week after the first thirty days. An inmate may be approved for additional privileges after 90 days. The record does not indicate whether (or when) prison officials approved Mr. Exum for additional privileges during the first two years of his confinement in Administrative Custody.

Inmates on the RRL continue to have access to physical and mental health services. On March 23, 2020, Mr. Exum "discussed current mental health concerns" with the prison psychologist. (ECF No. 25-14 at 23.) Aside from that one occasion, Mr. Exum never

reported any mental health concerns during his time on the RRL. However, he did express difficulty sleeping at night and received daily medication to help him sleep.

In February 2022, prison officials transferred Mr. Exum to SCI-Phoenix and placed him in the Intensive Management Unit ("IMU"), a specialized program used to house and provide socialization opportunities for individuals confined to an Administrative Custody setting for extended periods of time, including those on the RRL. In this program, inmates can work toward removal from the RRL and get back to general population by completing six phases of the program. Successful completion of each phase leads to the loosening of certain restrictions and increased privileges. Mr. Exum completed the IMU program and went back into general population on July 2, 2024.

B. **Procedural History**

On October 5, 2023, Mr. Exum filed suit against the former Secretary of the Pennsylvania Department of Corrections, John Wetzel (in his individual capacity) and the former Acting Secretary, George Little (in his official capacity) pursuant to 42 U.S.C. § 1983. He challenged the conditions of his confinement on the RRL, asserting claims for alleged violations of the Eighth Amendment (Count 1), the Fourteenth Amendment (Count 2), and the First Amendment (Count 3). Following discovery, Secretaries Wetzel and Little moved for summary judgment on August 21, 2024. Pursuant to the Court's Local Rules of Civil Procedure, Mr. Exum's response to the motion was due on September 4, 2024. However, given Mr. Exum's *pro se* status and incarceration, I extended the deadline for him to

3

respond to October 18, 2024. To date, Mr. Exum has not filed a response to the motion, which is ripe for disposition.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead, [s]he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B). If she fails to make this showing, then the court may "consider the fact undisputed for purposes of the motion" and/or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2), (3).

## III.  ANALYSIS

### A.  Claims Against Secretary Little

Mr. Exum cannot proceed with his claims for damages against Secretary Little in his official capacity. Section 1983 authorizes suit against any "person" who deprives an individual

4

of his Constitutional rights. *See* 42 U.S.C. § 1983. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As the former Acting Secretary of the Department of Corrections—an executive agency of the Commonwealth of Pennsylvania—Secretary Little is not a "person" subject to a suit for damages under Section 1983. *See* 71 Pa.S.A. § 61(a). This means that Mr. Exum cannot prevail on any of his claims against Secretary Little because he sued Secretary Little in his official capacity. Accordingly, Secretary Little is entitled to summary judgment on each of Mr. Exum's claims.

### B. First Amendment Claim

To prevail on his First Amendment retaliation claim, Mr. Exum "must establish that (1) [he] engaged in conduct protected by a right in the Constitution, (2) the … Defendants 'engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights,' and (3) a 'causal link' existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir.), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024) (quotation omitted). Mr. Exum cannot prevail on his claim because he has no evidence that he engaged in protected conduct or that Defendants retaliated against him for doing so.

As an initial matter, neither Mr. Exum's Complaint nor his response to Defendants' Motion identifies any protected conduct in which he might have engaged.  In addition, even if he had demonstrated that he engaged in protected conduct, he could not establish

his claim because he admits that Defendants placed him on the RRL because he engaged in misconduct. There is no dispute that on February 10, 2020, Mr. Exum assaulted a correctional officer, who was hospitalized after the attack. In his Complaint, Mr. Exum acknowledged that his placement on RRL "stem[med] from a[n] incident that took place at SCI-Smithfield" in "February 2020." (ECF No. 1 ¶ 32.) He also testified that he was placed on RRL following that incident and eventually was put into the IMU program "because" of his misconducts. (ECF No. 25-2 at 21:6-9.) Because he does not have any evidence that he was placed on RRL or put into the IMU program because he engaged in any protected activity, Mr. Exum cannot prevail on a First Amendment retaliation claim, and Defendants are entitled to summary judgment.

### C. Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. See U.S. Const. Amend. VIII. "[T]he Eighth Amendment 'does not mandate comfortable prisons[.]'" *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quotation omitted). But inhumane conditions of confinement can give rise to an Eighth Amendment violation. See *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022). To prevail on his claims that Secretary Wetzel violated the Eighth Amendment based on conditions of confinement, Mr. Exum "must meet two requirements: (1) the deprivation alleged must be, objectively, 'sufficiently serious,' and (2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quotation omitted). "The first

element is satisfied when an inmate is deprived of 'the minimal civilized measure of life's necessities.'" *Id.* (same). Life's necessities include "basic human needs such as food, clothing, shelter, medical care, and reasonable safety," *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000), as well as "social interaction, environmental stimuli, exercise, and sleep ...." *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 777 (M.D. Pa. 2016). "The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to [his] health or safety or conditions of confinement that violated the inmate's constitutional rights." *Thomas*, 948 F.3d at 138 (same). This is a subjective standard that requires actual knowledge on the part of prison officials. *See id.*. Mr. Exum cannot establish either prong of this claim.

Mr. Exum's confinement on RRL—standing alone—does not constitute cruel and unusual punishment. "Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman or totally without penological justification." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000)). Instead, Mr. Exum must demonstrate that the conditions were "objectively, 'sufficiently serious,'" such that they "pos[ed] a substantial risk of serious harm." *Mammana*, 934 F.3d at 372-73 (quotations omitted). Where, as here, the plaintiff challenges conditions in a segregated housing unit, "[t]he touchstone is the health of the inmate[,]" and I must also consider the duration and severity of such confinement. *Williams v. Sec'y Pennsylvania*

7

*Dep't of Corr.*, 117 F.4th 503, 517 (3d Cir. 2024) (quotations omitted). "[D]etermining the constitutionality of prison conditions is a heavily fact-specific inquiry" that depends on "the particular characteristics of the prisoner ...." *Id.* at 518.

Mr. Exum has not come forward with evidence to demonstrate that the conditions on RRL posed a substantial risk of serious harm. For example, he does not claim to suffer from any medical or mental health condition that might have cautioned against a prolonged period of segregated confinement. Indeed, when Mr. Exum was placed on RRL, he did not report any mental health concerns. And the evidence in the record reveals that Mr. Exum never reported suicidal thoughts while on RRL and rarely reported any mental health concerns. At most, the record indicates that Mr. Exum "discussed current mental health concerns" on one occasion after he had been on RRL for a little over a month, but it is not clear what those concerns were. (ECF No. 25-14 at 23.) In any event, aside from this one instance, there is no evidence that Mr. Exum raised any other mental health concerns. And the notes from his last annual psychological assessment in 2023 indicated that he did not report any mental health concerns and that there were "no known contraindications to Exum remaining in L5 housing ...." (ECF No. 25-15 at DEF-145.)

There is a question of whether placement on the RRL affected Mr. Exum's ability to sleep, as he testified that once he arrived, he was only able to sleep for an hour-and-a-half each night. And prison officials were aware that Mr. Exum had struggled with sleeping since he was a teenager, only sleeping two hours a night. However, there is no evidence

that placing Mr. Exum on the RRL posed a substantial risk of serious harm to him. For example, Mr. Exum has not come forward with any evidence that the negative impact on his sleep would lead to serious physical or mental health problems, and there is nothing in the record to suggest that Mr. Exum suffered from a serious condition during his time on RRL. Because prison officials had a penological justification to place Mr. Exum on the RRL, and the conditions of his confinement were not objectively, sufficiently serious, he cannot establish the first element of an Eighth Amendment violation.

Even if Mr. Exum could satisfy the objective prong of his Eighth Amendment claim, his claim would fail, because he has no evidence that Secretary Wetzel acted with deliberate indifference to his health or safety. In fact, there is no evidence regarding Secretary Wetzel's actual knowledge, as it pertains to Mr. Exum's health or safety.[1] Again, there is no evidence that Mr. Exum suffered from any physical or mental health conditions while on the RRL, and to the extent he did suffer from any such condition, the undisputed evidence in the record reveals that Mr. Exum received regular mental health care while he was placed on the RRL.

To the extent Mr. Exum had difficulty sleeping, the evidence demonstrates that the various prisons took steps to address that issue. For example, the initial psychiatric

---

[1] In fact, Secretary Wetzel could not have had any personal involvement in Mr. Exum's confinement after October 1, 2021, because he resigned from his position as of that date. *See* https://www.media.pa.gov/pages/corrections_details.aspx?newsid=520 (last accessed November 4, 2024).

assessment from SCI-Smithfield in 2017 notes that his physician ordered lab work to determine if some underlying condition was causing Mr. Exum's insomnia and ordered Mr. Exum to receive 50 grams of Benadryl "at night to help [him] with sleep and his insomnia." (ECF No. 25-16 at Page 4 of 4.) During his deposition in July of 2024, Mr. Exum confirmed that he was receiving "sleeping medication … for insomnia" and had "been receiving the medication for a while." (ECF No. 25-2 at 34:11-12, 34:18-19.) He also testified that he takes the medication every night. (*Id.* at 35:21 – 36:2.) Given the undisputed evidence in the record, no reasonable jury could conclude that Secretary Wetzel was deliberately indifferent to Mr. Exum's health or safety while he was housed on the RRL.

### D.     Fourteenth Amendment Claims

#### 1.     Substantive due process

Mr. Exum does not appear to base his Fourteenth Amendment claims on an alleged denial of substantive due process. However, to the extent he intended to raise such a claim, Mr. Exum could not proceed, in light of the Supreme Court's "more-specific-provision rule." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quotation omitted). Pursuant to that rule, "if a constitutional claim is covered by a specific constitutional provision, such as the … Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Id.* (same). Because the allegations in Mr. Exum's Complaint

allegations "fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, … the more-specific-provision rule forecloses [any] substantive due process claims" based on the same allegations. *Id.* at 261.

### 2. Procedural due process

Mr. Exum cannot prevail on his procedural due process claim. To do so, he would have to show that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quotation omitted). "To establish [a state-created liberty interest under the Fourteenth Amendment] in the conditions of confinement context, courts generally require a showing that the alleged liberty interest is substantial. To rise to the level of a liberty interest, the right alleged must confer freedom from restraint which … imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 438 (3d Cir. 2020) (quotation omitted) (original emphasis). To determine whether segregated detention constitutes an atypical and significant hardship, courts consider: "(1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates …." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

Mr. Exum has not come forward with any evidence that would permit a reasonable jury to conclude that he has a protected liberty interest. At most, the Department of Corrections's policies indicate that administrative custody provides closer supervision, control, and protection than is provided in general population. But Mr. Exum has not come forward with any facts about the various restrictions imposed on him while he was on the RRL or how much those restrictions differed from those imposed on prisoners in general population. Absent such evidence, no jury could conclude that Mr. Exum's segregated detention constituted an atypical and significant hardship. Thus, Mr. Exum cannot demonstrate that he had a protected liberty interest under the Fourteenth Amendment based upon his placement on the RRL and cannot prevail on his procedural due process claim. Secretary Wetzel is entitled to summary judgment as a result.

## IV.    CONCLUSION

Mr. Exum cannot prevail on any of his claims of alleged constitutional violations against Secretary Little because he asserted those claims against the former Acting Secretary in his official capacity, meaning that Secretary Little is not a person subject to suit under Section 1983. And Mr. Exum's various constitutional claims against Secretary Wetzel fail on the merits. I will therefore grant the Defendants' summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

November 15, 2024